**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THERESA PASSMORE, | : | CASE NO.  1:11-cv-01347-JG |
| | : | |
| Plaintiff, | : | JUDGE JAMES GWIN |
| | : | |
| v. | : | |
| | : | |
| DISCOVER BANK, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DISCOVER BANK'S**
**MOTION TO COMPEL ARBITRATION AND TO STAY OR DISMISS**
**THE CLAIMS OF THERESA PASSMORE**

Theresa Passmore ("Ms. Passmore") has filed a putative class action seeking money and

other damages on behalf of herself and a class of Discover® Card account holders based on

various state and federal claims against Discover Bank.  Ms. Passmore may not proceed with her

claims in a judicial forum or on a classwide basis because those claims are controlled by the

Cardmember Agreement governing her Discover® Card account, which contains a mandatory

arbitration provision, including a class action waiver.  The governing arbitration provision—

from which Ms. Passmore elected not to opt out, despite notice and opportunity to do so—is

applicable to all claims "arising from or relating to" her account.  By accepting these terms, Ms.

Passmore waived her right to bring suit in court, as well as any right to seek relief on behalf of a

putative class.

In light of these facts, Discover moved to compel arbitration in the Lake County Court of

Common Pleas before this case became removable.  Despite Ms. Passmore's conspicuous failure

to deny that she entered into the subject Cardmember Agreement with Discover, the Lake County Court ultimately denied Discover's motion on the grounds that the declaration submitted by Discover pursuant to 28 U.S.C. § 1746 "was not notarized" and therefore not "credible evidence" establishing the authenticity and applicability of the Cardmember Agreement at issue. (*See* June 10, 2011 Order.)  The Lake County Court's denial of Discover's motion to compel arbitration turned on a technicality and a misapplication of the applicable burdens of proof. Because it did not permit the actual litigation of the enforceability of the clause and did not constitute a final judgment on the merits, Discover is not foreclosed from filing this second motion to compel arbitration.  *See Moran v. Svete*, 366 Fed. Appx. 624, 628-29 (6th Cir. Feb. 24, 2010) (rejecting argument that second motion to compel was barred by collateral estoppel where denial of initial motion to compel was based on evidentiary issues and did not constitute a "final and conclusive decision on the merits.").

## BACKGROUND

A.    <u>Ms. Passmore's Account is Governed by a Cardmember Agreement.</u>

In or about July 2003, Discover Bank, a federally regulated, Delaware-chartered bank, entered into a contractual relationship with Theresa Passmore when Ms. Passmore applied for and was granted a credit card through Discover (the "Account").  When Discover Bank sent Ms. Passmore the Discover® Card she requested, it included in the envelope a Cardmember Agreement (the "Agreement") governing the terms and conditions of the Account.  *See* Affidavit of Jeff Naami, attached hereto as Exhibit 1 and the Cardmember Agreement, attached thereto as Exhibit A.  By opening and using the Account, Ms. Passmore "accept[ed] this Agreement" and agreed to its terms.  *See* Ex. A to Ex. 1, Cardmember Agreement at 2.  Ms. Passmore used her

2

Account from July 2003 through May 2006, resulting in a debt to Discover Bank of $4,964.45 as

of March 14, 2007.  *See* Ex. 1, Naami Affidavit at ¶¶ 5, 16.[1]

**B.      Ms. Passmore Agreed to the Terms of the Cardmember Agreement, Including the Arbitration Provision.**

The Agreement between Discover Bank and Ms. Passmore contains an arbitration

provision directing that "in the event of" any claims or disputes "arising from or relating to" the

Discover® Card account, either party "may elect to resolve the claim or dispute by binding

arbitration."  *See* Ex. A to Ex. 1, Cardmember Agreement at 11.  The arbitration provision also

allowed Ms. Passmore to assert individual claims in small claims court rather than arbitration

and provided for Discover Bank to advance Ms. Passmore any arbitration fees on request.  *Id.*, at

11-12.  Moreover, an amendment to the Cardmember Agreement, dated March 2004, authorized

the arbitrator to award Ms. Passmore all remedies permitted by the applicable substantive law,

including punitive damages and attorneys' fees.  *See* 2004 Notice of Amendment, attached to

Exhibit 1 as Exhibit B, at 5 ("The arbitrator shall follow applicable substantive law to the extent

consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege

recognized at law and shall be authorized to award all remedies permitted by the substantive

laws that would apply if the action were pending in court").[2]

---

[1]      Discover's initiation of suit against Ms. Passmore does not constitute a waiver of its right to compel arbitration of Ms. Passmore's claims pursuant to the express language of the arbitration provision, which provides that a party may elect arbitration subsequent to litigating in court where new claims are asserted or new parties are added.  *See* Ex. A to Ex. 1, Cardmember Agreement at 11 ("Even if all parties have opted to litigate a claim in court, you or we may elect arbitration with respect to any claim made by a new party or any new claims later asserted in that lawsuit, and nothing undertaken therein shall constitute a waiver of any rights under this arbitration provision.").

[2]      Delaware law, which governs every version of the Cardmember Agreement, *see* Ex. A to Ex. 1 at 12, expressly authorizes such an amendment procedure for credit card agreements.  5 DEL. CODE § 952(a); *Heiges v. JP Morgan Chase Bank, N.A.*, 521 F. Supp. 2d

To alert Ms. Passmore to the arbitration provision's terms, the provision was conspicuously noted on the top of the first page of the Agreement, advising, "The Arbitration of Disputes Section on page 11 includes a waiver of a number of rights, including the right to a jury trial."  *See* Ex. A to Ex. 1, Cardmember Agreement at 1.  The arbitration provision, set forth in all capital letters, includes a class action waiver whereby Ms. Passmore and Discover Bank agreed they would not be entitled to join claims of other cardmembers, nor litigate or arbitrate any claims as a representative or member of a class:

> IF EITHER YOU OR WE ELECT ARBITRATION, NEITHER YOU NOR WE SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM.  PRE-HEARING DISCOVERY RIGHTS AND POST-HEARING APPEAL RIGHTS WILL BE LIMITED. NEITHER YOU NOR WE SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER CARDMEMBERS WITH RESPECT TO OTHER ACCOUNTS, OR ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.

*See* Ex. A to Ex. 1, Cardmember Agreement at 11.

The Agreement explicitly gave Ms. Passmore the opportunity to opt out of the arbitration clause **without closing her Discover® Card account**.  In fact, the first paragraph of the Cardmember Agreement explained to Ms. Passmore, in italics, "***You have the right to reject the arbitration provision with respect to your new Account within 30 days after receiving your Card, as explained in the 'Acceptance of Agreement' section***."  *See* Ex. A to Ex. 1, Cardmember Agreement at title page (emphasis added).  The "Acceptance of Agreement"

---

641, 649 (N.D. Ohio 2007) (noting the effect of amendments to a cardmember agreement arbitration provision under Delaware law).

section then plainly set forth Ms. Passmore's right to opt out of the arbitration provision without penalty:

> The use of your Account or a Card . . . or your failure to cancel your account within 30 days after receiving a Card, means you accept this Agreement, including the Arbitration of Disputes provision on page 11.  You may, however, reject the Arbitration of Disputes section by providing us a notice of rejection within 30 days after receiving a Card. . . . **Rejection of arbitration will not affect your other rights or responsibilities under this Agreement . . .**

*Id.*, at 2 (emphasis added).  Finally, a disclosure on page 1 advised:  "The Arbitration of Disputes Section on page 11 includes a waiver of a number of rights, including the right to a jury trial." *See* Ex. A to Ex. 1, Cardmember Agreement at 1.

Instead of rejecting the arbitration provision, Ms. Passmore continued to use her Discover® Card after receiving notice of the arbitration provision, without objection and without opting out.  By doing so, Ms. Passmore accepted the Agreement and all of its terms.  *See* Ex. A to Ex. 1, Cardmember Agreement at 2.

## ARGUMENT

The Federal Arbitration Act establishes a liberal policy favoring arbitration agreements, and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Fazio v. Lehman Bros., Inc.*, 340 F.3d 385, 392 (6th Cir. 2003).  In addition, pursuant to 9 U.S.C. § 3, if any claims are referable to arbitration, a court must stay any remaining claims.  However, "litigation in which all claims are referred to arbitration may be dismissed."  *Hensel v. Cargill, Inc.*, No. 99-3199, 1999 U.S. App. LEXIS 26600, *10 (6th Cir. 1999).  The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.

*Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 91, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).

When deciding whether a matter must be submitted to arbitration, a court must answer two questions.  First, does a valid and enforceable arbitration agreement exist?  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985).  Second, if it does, does the dispute fall within its scope?  *Id.*  If the court answers both questions in the affirmative, it "**shall** direct" arbitration and stay the litigation, without reviewing the merits of the case.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985) (emphasis added).  *See also* 9 U.S.C. §§ 3, 4.

With respect to the first question, the enforceability of a written arbitration agreement affecting interstate commerce is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*  Here, the arbitration provision in the Agreement expressly provides that it is governed by the FAA.  *See* Ex. A, Cardmember Agreement at 11-12.  Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Hence, a court should enforce an arbitration agreement so long as it is enforceable according to the governing state's generally applicable contract law.  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 683, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996).

Regarding the second question, in determining whether the particular dispute falls within a valid arbitration agreement's scope, "there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Technologies, Inc. v. Comm'ns Workers*, 475 U.S. 643, 648-49, 106 S.Ct. 1415,

1418, 89 L. Ed. 2d 648 (1986) (internal quotation marks and citations omitted).  Here, the parties agreed to a broad arbitration provision which clearly encompasses the claims at issue.  *See* Ex. A to Ex. 1, Cardmember Agreement at 11-12.

## I.    THIS DISPUTE FALLS WITHIN THE SCOPE OF THE ARBITRATION PROVISION.

Ms. Passmore's claims plainly fall within the arbitration agreement's scope.  The arbitration provision requires the arbitration of "any past, present or future claim or dispute . . . between [Ms. Passmore] and [Discover Bank] **arising from or relating to** [Ms. Passmore's] Account" or "the relationships which result from [her] Account. . . ."  *See* Ex. A to Ex. 1, Cardmember Agreement at 11 (emphasis added).  Where, as here, an arbitration agreement subject to the FAA expressly refers to controversies "arising out of or relating to" the contract containing the arbitration agreement, the arbitration agreement is construed broadly to apply to all claims that "touch matters" covered by the contract.  *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987); *Rhone-Poulenc Specialities Chimiques v. SCM Corp.*, 769 F.2d 1569 (Fed. Cir. 1985).[3]  Moreover, in interpreting an arbitration agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1998).  *Accord Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

Ms. Passmore's claims arise from her allegation that Discover Bank has violated a myriad of state and federal laws in conjunction with the collection of the debt arising under the

---

[3]    *Accord Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (describing this language as a "broad" arbitration clause); *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002) (holding this broad language "signaled an intent to arbitrate all possible claims that touch on the rights set forth in the[] contract").

Account. Under any characterization of this dispute, it is clear that these claims relate to the Account and fall within the scope of the broad arbitration provision.

## II.  THE AGREEMENT TO ARBITRATE MUST BE ENFORCED PURSUANT TO THE FAA AND APPLICABLE LAW.

The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Thus, the Sixth Circuit has admonished that a party should not be allowed to "renege on that contract absent the most extreme circumstances." *Id.* at 715. Indeed, there is "a strong presumption in favor of arbitration under the FAA," *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. Ohio 2005) (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)) and "any doubts regarding arbitrability must be resolved in favor of arbitration," *id.* (citing *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003)).

### A.    The Arbitration Provision is Valid and Enforceable.

The arbitration provision set out in the Agreement should be enforced as written. Similar arbitration provisions in standard form contracts for credit cards and other consumer credit are regularly enforced by courts applying Delaware law.[4]  *See*, *e.g.*, *Edelist v. MBNA Am. Bank*, 790

---

[4]      Delaware's generally applicable contract law controls the enforceability of the arbitration provision, per the parties' choice-of-law. *See* Ex. A to Ex. 1, Cardmember Agreement at 12 ('This agreement will be governed by the laws of the State of Delaware and applicable federal laws."). Application of Ohio law would not alter this result. As in Delaware and in accord with the FAA's "liberal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, Ohio law also enforces similar arbitration provisions in consumer credit cases. *See*, *e.g.*, *Hawkins v. O'Brien*, 2009 Ohio 60, 2009 Ohio App. LEXIS 73, P34 (2009) (affirming the trial court's referral of case to arbitration in consumer context and holding that the arbitration clause's class action waiver did not deny the plaintiff "any of the substantive rights" granted by the Ohio Consumer Sales Practices Act or the Federal Fair Debt Collection Practices Act.).

A.2d 1249, 1260 (Del. Super. 2001); *Sagal v. First USA Bank*, 69 F. Supp.2d 627, 632 (D.C. Del. 1999) (applying Delaware law), *aff'd*, 254 F.2d 1078 (3d Cir. 2001).  Further, Delaware law permits the acceptance procedures at issue here.  *See*, *e.g.*, *Grasso v. First USA Bank*, 713 A.2d 304, 309 (Del. Super. 1998) (holding plaintiff "unequivocally manifested acceptance" of her cardholder agreement by making purchases and payments on her account).

*Edelist* is the leading Delaware case on this proposition, and is instructive here.  The *Edelist* plaintiff filed a putative class action against a credit card issuer for state statutory and common-law claims relating to the credit card account.  790 A.2d at 1251.  The credit card issuer moved to compel arbitration based on an arbitration provision that included an opt-out right and barred class-wide arbitration while also providing for the issuer's advance of any arbitration fees and the award of attorneys' fees.  *Id*. at 1253.  Applying Delaware law, the court enforced the arbitration provision as written, finding specifically that the class action waiver was "clearly articulated" and there was "nothing unconscionable about it."  *Id*. at 1261.

The facts at bar parallel those of *Edelist* and a similar result should issue:

- The Agreement's arbitration provision and class action waiver were conspicuously disclosed in capital letters.  *See* Ex. A to Ex. 1, Cardmember Agreement at 11.

- Ms. Passmore had notice and an opportunity to opt out of the arbitration provision, but declined to do so.  *See* Ex. A to Ex. 1, Cardmember Agreement at 2.

- The arbitration provision provides for Discover Bank's advance payment of arbitration fees and the recovery of attorneys' fees—as well as all other remedies permitted by substantive law—as determined by the arbitrator.  *See* Ex. A to Ex. 1, Cardmember Agreement at 11-12; Ex. B to Ex. 1, 2004 Notice of Amendment at 5.

As in *Edelist*, the arbitration provision agreed-to by Discover Bank and Ms. Passmore is valid and enforceable and should be applied as written.

9

By enforcing class waivers in arbitration clauses, Delaware and Ohio have been in line with the mandates of federal law.  Recently, in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (U.S. 2011), the Supreme Court emphasized that "[a]rbitration is poorly suited to the higher stakes of class litigation," *id*. at 1752, and held that state unconscionability doctrines cannot be used to strike down class action waivers in consumer arbitration agreements as against public policy, without running afoul of the Federal Arbitration Act.  *Id*. at 1753.  Even in California, which has historically been hostile to class waiver clauses in arbitration provisions, one can no longer avoid arbitrating on the basis of an allegedly unconscionable class waiver.  *Id*.

## CONCLUSION

For all the reasons set forth above, the Agreement between Discover Bank and Ms. Passmore should be enforced and Ms. Passmore's claims against Discover Bank should be stayed or dismissed pending arbitration.

Respectfully submitted,

s/ Saber W. VanDetta
Steven A. Friedman (0060001)
(steven.friedman@ssd.com)
Saber W. VanDetta (0075098)
(saber.vandetta@ssd.com)
SQUIRE, SANDERS & DEMPSEY (US) LLP
127 Public Square
4900 Key Tower
Cleveland, Ohio 44114
(216) 479-8500
(216) 479-8780 (facsimile)

Attorneys for Discover Bank

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that Discover Bank's Motion to Compel Arbitration and to Stay or Dismiss Theresa Passmore's Claims was electronically filed.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic docket system.

<u>*s/ Saber W. VanDetta*</u>
One of the Attorneys for Discover Bank