UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                     :
THERESA M. PASSMORE,                                 :
                                                     :  CASE NO. 1:11-CV-01347
            Plaintiff,                               :
                                                     :
vs.                                                  :  ORDER
                                                     :  [Resolving Doc. Nos. 8, 9, 11, 21, 26, 27]
DISCOVER BANK *et al.*                               :
                                                     :
            Defendants.                              :
                                                     :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this case, this Court decides whether to reconsider certain decisions that the Lake County common pleas court made before this case was removed to this Court. Specifically, this Court examines whether to reconsider a decision denying a request to compel arbitration and whether to order this debt collection practices lawsuit to arbitration.

Defendant Discover Bank originally filed this lawsuit as a debt collection action in the Lake County Court of Common Pleas. [Doc. 1-1 at 1.] The alleged debtor counterclaimed and alleged violations of the Federal Debt Collection Practice Act (FDCPA) and the Ohio Consumer Protection Act, as well as fraud, abuse of process, defamation, and civil conspiracy. [Doc. 1-1 at 19.] Discover Bank then dismissed its original claims, and the state court realigned the parties to make Theresa Passmore the plaintiff and denied Discover's motion to compel arbitration. Removal followed.

-1-

Case No. 1:11-CV-01347
Gwin, J.

Now, Plaintiff Passmore moves the Court for a reconsideration and rehearing [Doc. 9] of the Court of Common Pleas' realignment. [Doc. 1-7 at 13.] Defendants Discover Bank, [Doc. 8], Yale Levy, and Levy & Associates, [Doc. 21], renew their efforts to compel arbitration, and the Plaintiff in turn moves the Court to strike the motions to compel arbitration. [Doc. 11; Doc. 26.] For the following reasons, the Court **DENIES** the Plaintiff's motion for reconsideration, **GRANTS** the Defendants' motions to compel arbitration, and **DENIES** the Plaintiff's motion to strike.

## I. Background

### A. *State Court Proceedings*

Defendant Discover Bank sued Theresa Passmore in the Lake County Court of Common Pleas, saying that Plaintiff Passmore had entered into a credit card agreement and had failed to pay a balance in the amount of $4964.45. [Doc. 1-1 at 1.] On September 30, 2010, Passmore answered and counterclaimed against Discover, joining as counterclaim-defendants Levy and Levy & Associates, a debt collection agency. [Doc. 1-1 at 19.] With her counterclaim, Passmore sought to represent a class of similarly situated persons. Passmore's class counterclaims alleged violations of the Federal Debt Collection Practice Act (15 U.S.C. § 1692) and the Ohio Consumer Protection Act (O.R.C. §§ 1345.02, 1345.03), as well as fraud, abuse of process, defamation, and civil conspiracy. [Doc. 1-1 at 19.]

### B. *The Parties' Realignment*

On October 22, 2010, Discover dismissed its breach of contract and unjust enrichment claims against Passmore. [Doc. 1-2 at 41.] On December 20, 2010, counterclaim-defendants Levy & Associates moved to realign the parties to their current configuration, [Doc. 1-4 at 1], and on May

Case No. 1:11-CV-01347
Gwin, J.

31, 2011, the Lake County Court of Common Pleas granted the Defendants' request to realign Passmore as the plaintiff.[Doc. 1-7 at 13.]

### C. The Arbitration Dispute

On October 22, 2010, and after it dismissed its claims against Passmore, [Doc. 1-2 at 41], Discover moved to compel arbitration of the Plaintiff's state and federal claims, saying that an arbitration clause in Discover's Cardmember Agreement allowed either party to insist on arbitrating disputes arising in connection with Discover credit accounts. [Doc. 1-2 at 2.] On October 25, 2010, Discover moved to stay discovery pending a ruling on its motion to compel arbitration. [Doc. 1-2 at 43.]

Passmore opposed Discover's motion to compel arbitration. [Doc. 1-4 at 30.] On April 25, 2011, the Plaintiff also moved to strike a declaration submitted to support the motion to compel arbitration.

The Lake County Court of Common Pleas denied the Defendants' motions to compel arbitration, refusing to consider the declaration of Jeff Naami (the director of Discover's credit card servicing affiliate) because it was not notarized, and finding that the attached copies of Discover's credit card agreement were therefore unauthenticated and failed to establish a binding arbitration agreement between Discover and Passmore. [Doc.1-7 at 23.]

### E. Federal Court Proceedings

On June 30, 2011, the Defendants removed this case to this Court. [Doc. 1.] On September 27, 2011, the Levy Defendants moved to compel arbitration and stay proceedings, [Doc. 21], and the Plaintiff renewed her opposition to arbitration as against the Levy Defendants by way of motion to strike. [Doc. 26.]

Case No. 1:11-CV-01347
Gwin, J.

## II. Analysis

*A. The Plaintiff's Motion to Reconsider Realignment.*

Plaintiff Passmore moves this Court to reconsider the Court of Common Pleas' realignment of parties. [Doc. 10 at 3.] "District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed.Appx. 949, 959 (6th Cir. 2004) (paraphrasing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). Generally, district courts will have jurisdiction over interlocutory orders and motions for reconsideration when there is "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x. at 959 (citing *Reich v. Hall Holding Co.*, 990 F.Supp. 955, 965 (N.D.Ohio 1998)). District courts have significant discretion in determining whether to grant a motion for reconsideration of an interlocutory order. *Id.* at 959 n.7.

The Plaintiff says that the Court of Common Pleas was not authorized to realign the parties. Ohio courts, however, realign parties at their discretion without reprimand. *See McCrone v. Bank One Corp.*, 822 N.E.2d 1261 (Ohio 2005); *New Artesian v. Stiefel*, 2000 WL 222110 (Ohio Ct. App. 2000); *Smith v. Jones*, 889 N.E.2d 141 (Ohio Ct. App. 2007); *Magyar v. Lightning Rod Mut. Ins. Co., Inc.*, No. E-95-007, 1995 WL 604608, at *1 (Ohio Ct. App. Oct. 13, 1995). And perfectly clear precedent supports realignment in identical procedural circumstances. *Hrivnak v. NCO Portfolio Management, Inc.*, 723 F.Supp.2d 1020 (N.D. Ohio Jul. 19, 2010). In *Hrivnak*, following a counterclaim under the FDCPA, the original plaintiff dropped its initial claims and a counter-defendant then moved for a realignment of parties. *Id.* at 1021. The state court granted the counter-defendant's motion and realigned the parties before the case was removed, and the district court

Case No. 1:11-CV-01347
Gwin, J.

subsequently found removal jurisdiction to be proper based on the realigned parties. *Id.* at 1028.

The Plaintiff, makes no serious argument that *Hrivnak* does not control this action. The Plaintiff's motion to reconsider the Court of Common Pleas' realignment is brief and cites no contrary controlling authority. [Doc. 9.] The motion demonstrates no clear error, instead sniping peripherally at the state court's order to refile pleadings, arguing generally that forum shopping is disfavored under Ohio law without providing any example of realignment denied on that basis, parsing examples of realignment without showing any error, and punting entirely on *Hrivnak*, opining without authority, that "a solitary trial court decision" cannot support realignment. [Doc. 9 at 4.]

Despite the Plaintiff's evident dissatisfaction with the strategic implications presented by the procedural posture of the case–she claims, among other things, that removal itself amounts to injury–the realignment poses no threat of manifest injustice as contemplated by *Rodriguez.* 89 F. App'x. at 959. The Plaintiff's argument about forum-shopping proves too much: removal under any conditions would be impossible if the Plaintiff's characterization of the policy prohibitions were enforced. [Doc. 10 at 7.] Moreover, none of the Plaintiff's authorities address realignment. *See Carter-Jones Lumber Co. v. B & A Bldg. Servs., Inc.*, 2008 WL 62288 (N.D. Ohio Jan. 04, 2008) (a plaintiff's claim is barred when the claim was previously dismissed voluntarily in a different forum, following an adverse partial summary judgment); *In Re Gibson*, 573 N.E.2d 1074, 1077 (Ohio 1991) (an out of state judgment regarding child custody should be given full faith and credit to avoid shuttling children from state to state); *Friedman v. Johnson*, 480 N.E.2d 82 (Ohio 1985) (plaintiffs modified a request for monetary damages or injunctive relief in order to avoid the jurisdiction of the Court of Claims); *Harris v. Lewis*, 433 N.E.2d 223 (Ohio 1982) and *Davis v. State Personnel Bd. of Review*, 413 N.E.2d 816 (Ohio 1980) (disallowing a dual right of appeal in two separate

Case No. 1:11-CV-01347
Gwin, J.

jurisdictions). None of these decisions, which resolve plaintiffs' attempts to establish jurisdiction for unsuccessful claims in different forums, transmute a realignment order that reflects the real posture of the primary dispute remaining in the case into an unlawful mechanism for forum-shopping.

If the Court were to decide whether to realign the parties as a question of first instance, it would reach the same conclusion as the state court, following the Sixth Circuit's direction that "the parties be aligned in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment. *U.S. Fidelity and Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992). Here, the Court need only determine whether there has been clear error or a threat of manifest injustice. As none has been demonstrated, this Court is inclined to follow the state court's decision in the matter. *See Tune, Entrekin & White, P.C. v. Magid*, 220 F.Supp.2d 887, 892 (M.D. Tenn. 2002) (whether or not a state court should realign parties is ultimately a question for the state courts); *Hrivnak*, 723 F.Supp.2d at 1027 (a state court's order for realignment "removes any concerns regarding collusion between the parties from the equation and constitutes a formal, pre-removal, determination regarding the character of the action and the parties' respective roles.").

Finding no clear error or manifest injustice threatened by the parties' realignment, the Court **DENIES** the Plaintiff's motion to reconsider realignment.

**B. The Defendants' Motion To Compel Arbitration.**

 *1. Rooker-Feldman*

The Defendants move the Court to reconsider the state court's denial of their motions to compel arbitration. [Doc. 8.] In opposition, the Plaintiff says that the Rooker-Feldman doctrine prohibits the court from considering Discover's Motion to Compel Arbitration. [Doc. 11.] The

Case No. 1:11-CV-01347
Gwin, J.

doctrine prevents "a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment [in the lower federal courts] based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Pieper v. American Arbitration Ass'n, Inc.*, 336 F.3d 458, 460 (6th Cir. 2003) (quoting *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 936 (6th Cir. 2002)).

In *Pieper*, the Sixth Circuit held that the Rooker-Feldman doctrine can apply to interlocutory orders from state courts, preventing a district court from reviewing an order to stay litigation pending arbitration. *Pieper*, 336 F.3d at 464. However, *Pieper* concerned an independent appeal to federal court from a state court's arbitration order, not a fully removed, continuous case. *Id.* at 459. If the state court had stayed or dismissed the case pending arbitration, and the Plaintiff had then separately raised her assignments of error as constitutional claims under federal law, as did the *Pieper* claimants, this Court's subject matter jurisdiction might have been barred by Rooker-Feldman.[1] *Id.* at 460-61.

However, because this is one continuing case, the Rooker-Feldman doctrine does not apply. "After removal, interlocutory orders of the state court are transformed into orders of the court to which the case is removed." *In Re Diet Drugs*, 282 F.3d 220, 231-2 (3d Cir. 2002). This Court is deemed to have originated the order, and can appropriately reopen and reconsider it as it would any other. *Preferred Rehabilitation, Inc., v. Allstate Ins. Co.*, No. 09-CV-11409, 2010 WL 3488673, at

---

[1] Even this is not necessarily so. There is some suggestion that *Pieper* may no longer be good law in light of the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), where the Supreme Court chastised lower courts for construing the doctrine "to extend far beyond the contours" of its foundational cases. *Id.* at 283. Post-*Exxon Mobil*, several circuit courts doubt that the Rooker-Feldman doctrine applies to interlocutory orders. *E.g. Truserv Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005); *Del-Ray Battery Co v. Douglas Battery Co.*, 635 F.3d 725, 730 (5th Cir. 2011). The Sixth Circuit has yet to address this question but has suggested that its pre-*Exxon Mobil* jurisprudence may have "expanded" the doctrine to a degree incompatible with *Exxon Mobil*. *Coles v. Granville*, 448 F.3d 853, 859 n.1 (6th Cir. 2006). This Court need not address the proper scope of the Rooker-Feldman doctrine here, however, as the doctrine does not apply in a continuing case where it exercises continuing jurisdiction. The Court therefore **DENIES** the Defendant's Motion for Leave to File Supplemental Authority.

Case No. 1:11-CV-01347
Gwin, J.

*8 (E.D. Mich. Sept. 1, 2010) ("[T]he Rooker-Feldman doctrine may not be invoked to abrogate the power of a district court, under appropriate circumstances, to 'dissolve[] or modif[y]' an order entered by a state court prior to removal."); *see also* Nasso v. Seagal, 263 F.Supp. 2d 596, 608 (E.D.N.Y. 2003) ("Because the 'Rooker-Feldman doctrine does not work to defeat a district court's authority over the management of its own case,' even where the exercise of such management 'has the secondary effect of voiding a state court determination,' the doctrine does not preclude this Court from reviewing orders that were entered prior to removal."). This Court's reconsideration is specifically authorized by 28 U.S.C. § 1450, which provides that following removal of "any action" from state to federal court, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in force and effect until dissolved or modified by the district court." *Id*.

Exercising continuing jurisdiction over what are deemed to be its interlocutory orders, this Court reviews the state court's order under the standards governing its review of its other non-final orders.[2/] A district court may properly reopen interlocutory matters for reconsideration when there is "new evidence available." *Rodriguez*, 89 F. App'x. at 959. The Naami Declaration [Doc. 8-2] was previously deemed unauthenticated for lack of notarization under Rule 10(D) of the Ohio Rules of Civil Procedure, and the state court ended its arbitration analysis there, deeming no contract established upon which arbitration could be compelled. [Doc. 1-7 at 22.] However, the Naami Declaration has been submitted upon Discover's refiling before this Court, [Doc. 8-2], and this Court applies federal law in determining whether to consider it. *Granny Goose Foods Inc. v. Brotherhood*

---

[2/] Defendant Discover argues that its motion to compel arbitration should be examined solely for preclusion. [Doc. 12 at 2.] According to Discover, the renewed Motion to Compel Arbitration is not barred because the Court of Common Pleas did not reach what Discover characterizes as the merits of its motion. *Moran v. Svete*, 366 Fed. App'x. 624, 628-29 (6th Cir. Feb 24, 2010). Because this Court is not precluded from reconsidering what is deemed to be its earlier order, it need not consider the interaction between the Rooker-Feldman doctrine and preclusion, which the Sixth Circuit has addressed in *ADSA v. Ohio*, 176 Fed. App'x. 640, 644 (6th Cir. 2006).

Case No. 1:11-CV-01347
Gwin, J.

*of Teamsters*, 415 U.S. 423, 437 (1974) ("[O]nce a case has been removed to federal court, it is well settled that federal rather than state law governs the future course of proceedings . . ."); *Nasso*, 263 F.Supp. 2d at 608.

As Defendant Levy argued before the state court, [Doc. 1-7 at 1], the Naami Declaration is a properly authenticated sworn statement under 28 U.S.C. 1746, which provides that a properly sworn statement can be filed in lieu of a notarized affidavit. The Court therefore treats the Discover's Motion to Compel Arbitration, and the Levy Defendants' similarly styled Motion, as Motions to Reconsider in light of new evidence unconsidered by the state court.

*2. The Arbitration Agreement*

Upon reconsideration in light of the Naami Declaration, the Court finds that this dispute must be arbitrated under the terms provided by the Cardmember Agreement. The Federal Arbitration Act ("FAA") provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a court determines that the cause of action is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete. 9 U.S.C. § 3. A district court considering a motion to compel arbitration has four tasks: "first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). The FAA favors the enforcement of arbitration agreements, directing the resolution of

Case No. 1:11-CV-01347
Gwin, J.

any doubt to favor arbitration. *Id*.

First, the parties agreed to arbitrate. The Plaintiff has not contested the substance of the Naami Declaration, saying only that without it, the Defendants fail to establish the existence of a contract upon which an arbitration agreement can be enforced. [Doc. 1-2 at 2.] Upon the Court's reconsideration in light of the Naami Declaration, however, it is clear that a valid and binding contract existed between Discover and Passmore, in which the parties agreed that either party could compel arbitration. The Plaintiff opened a credit card account with Discover in July 2003, and when her application was approved, Discover mailed a credit card and a copy of the Cardmember Agreement in force at that time. [Doc. 8-2 at 2.] The Cardmember Agreement mailed to her provided that use of the card constituted acceptance of the Agreement, with specific reference to the arbitration clause, and provides that account holders can opt out of the arbitration clause by notice within 30 days of receiving the card. [Doc. 8-3 at 3.] The language in the Cardmember Agreement providing that use of the card constituted acceptance "alone establishes" that the offer to extend credit under the Agreement "constitutes the terms of the contract and establishes that using the card or account means the offer has been accepted." *Grasso v. First USA Bank*, 713 A.2d 304, 309 (Del. Super. 1998). The Plaintiff "unequivocally manifested acceptance," *id.*, by making a series of purchases on the account and accumulating a balance of $4,964.45. [Doc. 8-2; Doc. 8-8.]

The Cardmember Agreement contains a class waiver clause, an arbitration clause permitting either party to elect arbitration of any dispute relating to the account, elects Delaware law, and provides that the arbitration agreement "inure[s] to the benefit of any third party named as a co-defendant with [Discover]." [Doc. 8-3 at 7-8.] The Plaintiff never opted out of the arbitration agreement, as she was entitled to do without penalty or revocation of the card. [Doc. 8-2 at 3.]

-10-

Case No. 1:11-CV-01347
Gwin, J.

The first paragraph of the Agreement contained an italicized sentence instructing the account-holder that she had the right to reject the arbitration agreement, the arbitration provision and class action waiver sections were distinguished from the rest of the agreement by capital letters, the Plaintiff had notice and opportunity but declined to opt out, and the Cardmember Agreement provides that Discover must advance arbitration fees, provides for the recovery of arbitration fees, and authorizes the arbitrator to implement any awards and remedies permitted by substantive law.

Under governing law, which is satisfied when arbitration clauses–indeed, even unilateral amendments imposing arbitration provisions–are "clearly," "forthrightly," and "repeatedly" set forth to account holders, as was the case in the instant Cardmember Agreement, the arbitration clause is enforceable. *Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1260 (Del. Super 2001) (enforcing arbitration clause where plaintiff had notice and opportunity but failed to opt out of an arbitration agreement, and where arbitrator was authorized to impose all remedies permitted by substantive law).

Second, the Court must determine the scope of the arbitration agreement. The procedural history of this case makes this a particularly easy determination, because each of the remaining claims are within the bounds of the Cardmember Agreement's arbitration clause, which contemplates disputes "arising from or relating to" the account. [Doc. 8-2.] The Cardmember Agreement provides that the arbitration clause "will also inure to the benefit of any third party named as a co-defendant" with Discover in any claims arising from or relating to the account. [Doc. 8-7 at 7.] There is no suggestion that any of the Plaintiff's claims are non-arbitrable under federal law, so the third and fourth inquiries the Court must make are moot. Upon the Court's reconsideration, in light of the Naami Declaration, of Discover's Motion to Compel Arbitration, [Doc. 8], and the Levy Defendants' Motion to Compel Arbitration, [Doc. 21], all remaining claims in this dispute must proceed to

Case No. 1:11-CV-01347
Gwin, J.

arbitration.

Finally, there is the matter of the parties' alternate requests for delay. The Plaintiff asks the Court to postpone her response to Discover's Motion to Compel Arbitration until she has completed "necessary discovery," by which phrase she refers principally to discovery materials produced in *Ross v. Bank of America, N.A., et al.*, No. 05-7116 (S.D.N.Y. filed Aug. 11, 2005). [Doc. 12-2.] On the other hand, Defendant Discover suggests that if the Plaintiff intends to challenge the validity of the arbitration clause based on the allegations in the *Ross* MDL, the matter should be stayed pending resolution in the Southern District of New York. [Doc. 17 at 4.]

The Court declines both invitations. *Ross* is a long-running multi-district class action lawsuit in which credit card issuers, including Discover, are alleged to have violated the Sherman Act by refusing to issue cards without arbitration clauses or class waivers, [Doc. 11], but "allegations of fraudulent schemes are 'no longer sufficient to overcome the strong federal policy in favor of arbitration.'" *Fazio*, 340 F.3d at 394 (quoting *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990)). Moreover, the particular Cardmember Agreement at issue here provides a readily apparent opt-out arbitration clause, of which the Plaintiff has failed to avail herself. She has not alleged any fraud, fraud in the inducement, or procedural unconscionability with respect to the instant case, merely referencing the *Ross* MDL.[3/] And she is herself a member of a certified sub-class in the *Ross* MDL and may press any antitrust claims she may have through that mechanism. [Doc 17 at 4.]

---

[3/]The Plaintiff believes that because the *Ross* court, construing all class allegations as true, allowed discovery as to the meaningfulness of the opt-out clause in the context of the Sherman Act MDL, this Court must delay ruling on the Motion to Compel Arbitration until the Plaintiff has conducted her own parallel discovery in this case. [Doc. 11 at 7.] Discover, for its part, fiercely disputes any inference regarding allegations in the antitrust case, and says that unlike several co-defendants, Discover included an "opt-out" provision. [Doc. 12 at 3.] The Court will not speculate as to the implications of industry-wide antitrust allegations that are neither resolved nor before the Court, and declines to exercise its discretion to delay ruling in this case pending the resolution of what appears to be an extensive and complicated MDL, or replicate the discovery battles in that MDL case in enforcing a perfectly clear arbitration clause.

Case No. 1:11-CV-01347
Gwin, J.

All necessary showings have been made to demonstrate that the arbitration clause in the Cardmember Agreement is valid, enforceable, and binds the parties currently before the Court to arbitrate this particular dispute. The Court denied Discover Bank's motion to stay discovery pending a ruling on its Motion to Compel Arbitration, [Doc. 13], allowing the Plaintiff to continue to seek discoverable information in this case, [Doc. 20], but finds no good cause to delay the ruling itself. The Defendants' Motions to Compel Arbitration are therefore **GRANTED**.

### IV. Conclusion

For the foregoing reasons, the Plaintiff's Motion for Reconsideration is **DENIED**, the Plaintiff's Motion to Strike is **DENIED**, and Defendants' Motions to Compel Arbitration are **GRANTED**.

IT IS SO ORDERED.


Dated: October 26, 2011          *s/      James S. Gwin*
                                 JAMES S. GWIN
                                 UNITED STATES DISTRICT JUDGE